ROSE HUNTER, Administrator of the Estate of Aundrea Tashae Hunter, Plaintiff v.
  TRANSYLVANIA COUNTY DEPARTMENT OF SOCIAL SERVICES; COUNTY OF
  TRANSYLVANIA, NORTH CAROLINA; D'ANDRE CURRY; CARSON GRIFFIN; and
  NORIDA MOODY, Defendants

No. COA10-288

(Filed 2 November 2010)

**1. Appeal and Error— interlocutory order—substantial right —immunity**

While the denial of a summary judgment motion is typically an interlocutory order, a claim based on immunity affects a substantial right and is entitled to immediate review.

**2. Immunity— public official immunity—social worker**

The trial court erred in a wrongful death case by denying defendant Department of Social Services (DSS) social worker's motion to dismiss and granting plaintiff partial summary judgment on the issue of defendant's defense of public official immunity. Based on the underlying circumstances of defendant's role at DSS and her role in the investigation, she was a representative of the State who was vested with and exercised discretion consistent with those who qualify as public officials. Thus, the public official doctrine barred plaintiff's claim against defendant in her individual capacity.

Appeal by defendant Norida Moody from order entered 21 January 2010 by Judge Dennis J. Winner in Transylvania County Superior Court. Heard in the Court of Appeals 14 September 2010.

*Prince, Youngblood & Massagee, PLLC, by Sharon B. Alexander, for plaintiff–appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Sean F. Perrin, for defendant–appellant Norida Moody.*

MARTIN, Chief Judge.

Defendant Norida Moody ("Moody") appeals from an order of the trial court denying her motion to dismiss and granting plaintiff partial summary judgment on the issue of Moody's defense of public official immunity. For the reasons which follow, we reverse the trial court's order.

Plaintiff Rose Hunter is the maternal grandmother of the decedent, Aundrea Hunter. From April 2005 to December 2006, the time of Aundrea's death, plaintiff had been contacting Transylvania County Department of Social Services ("DSS") alleging that Stacy Hunter and her boyfriend, D'Andre Curry, had been neglecting Stacy's children. Individual reports were filed April 2005, July 2006, and November 2006. Moody, a social worker at DSS, was assigned to investigate the April 2005 and November 2006 reports. In conducting an investigation of neglect, the policy of DSS was to conduct interviews primarily with accused parent or parents, talk to collateral witnesses, and visit the home. Per DSS policy, Moody conducted office interviews with plaintiff and Stacy separately and together, and also conducted a home visit at Stacy's apartment. From her investigation, Moody had not seen any evidence of abuse or neglect. The collateral witnesses she had interviewed had downplayed any reports of neglect, as did Stacy. Plaintiff was the only witness who expressed concern to Moody. Visits to the home revealed that the children appeared well-fed and adequately cared for. Due to a lack of evidence to necessitate further action after the investigation of the April 2005 and June 2006 reports, those cases were closed. The November 2006 report was ongoing when then-infant Aundrea died from brain hemorrhage, also known as shaken baby syndrome, at the hands of Stacy's boyfriend Curry. Prior to and separate from this litigation, Curry was sentenced to two years in prison.

Plaintiff filed a wrongful death action on behalf of Aundrea Hunter's estate against several defendants, including Moody, alleging that Aundrea's death was proximately caused by their negligence. Plaintiff alleged, among other things, that Moody, individually and in her official capacity as an agent of Transylvania County DSS, failed to thoroughly investigate and adequately respond to the claims of neglect. On 22 December 2009, defendants filed a joint motion for summary judgment, seeking dismissal of the claims against Transylvania County DSS, County of Transylvania, Carson Griffin, and Moody in her official capacity based on sovereign immunity and those against Moody in her individual capacity based on public official immunity. By order entered January 2010, the trial court determined that there was no issue of material fact with regard to Moody's individual defense of public official immunity, and denied Moody's motion to dismiss based on public official immunity, and granted partial summary judgment in favor of the plaintiff on that issue. The trial judge granted summary judgment in favor of Transylvania County

DSS, County of Transylvania, Carson Griffin, and Moody in her official capacity based on sovereign immunity. Moody gave notice of appeal.

_____

[1] Moody's appeal is clearly from an interlocutory order. Generally, there is no right of immediate appeal from an interlocutory order. *See Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 230, 664 S.E.2d 649, 651-52 (2008). However, interlocutory appeals are proper when the order denies an appellant a substantial right. *Id.* While the denial of a summary judgment motion would not ordinarily affect a substantial right, the denial of a summary judgment motion based on a claim of immunity is immediately appealable, because if a case were permitted to proceed to trial regardless of a valid immunity claim, the immunity would be effectively lost. *See Slade v. Vernon*, 110 N.C. App. 422, 425, 429 S.E.2d 744, 746 (1993). Accordingly, we address the merits of Moody's appeal.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). The moving party bears the burden of showing that no triable issue of fact exists. *See Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). One way of showing that no issue of fact exists is to show that the non-moving party cannot overcome an affirmative defense which would bar the claim. *See Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

[2] Moody argues the trial court erred by denying her motion to dismiss plaintiff's complaint against her in her individual capacity. Specifically, Moody contends she is entitled to public official immunity as a representative of the State, and that the public official doctrine bars plaintiff's claim against defendant in her individual capacity. We agree.

A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority. *See Mabrey v. Smith*, 144 N.C. App. 119, 122, 548 S.E.2d 183, 186, *disc. review denied*, 354 N.C. 219, 554 S.E.2d 340 (2001). A public employee, as opposed to a public official, can be held individually liable for mere negligence in the performance of his governmental or discretionary duties. *See Meyer v. Walls*, 347 N.C. 97,

112, 489 S.E.2d 880, 888 (1997). Since plaintiff concedes, in response to Moody's interrogatories, that Moody did not act corruptly or maliciously, to survive a motion for summary judgment plaintiff's claim must rest on whether Moody was vested with sufficient power and discretion as a social worker to qualify as a public official, or whether Moody should be classified as a public employee. This Court has previously explained that "[a] public official is one whose position is created by the N.C. Constitution or the N.C. General Statutes and exercises some portion of sovereign power and discretion, whereas public employees perform ministerial duties." *Mabrey*, 144 N.C. App. at 122, 548 S.E.2d at 186.

The director of social services of a county is a position created by statute; the director has, *inter alia*, the responsibility "to assess reports of child abuse and neglect and to take appropriate action to protect such children[.]" N.C. Gen. Stat. § 108A-14(a)(11) (2009). Additionally, "[c]ommon sense tells us that the home inspection and meetings required the participating [person] to assess the individual characteristics and circumstances of the [child] and the [family accused of neglect]. The process must have involved [such person's] personal deliberation, decision, and judgment." *Hobbs v. N.C. Dep't of Hum. Res.*, 135 N.C. App. 412, 422, 520 S.E.2d 595, 602 (1999) (citations and internal quotation marks omitted). The director of social services has long been recognized as a public official. *See Meyer*, 347 N.C. at 112, 489 S.E.2d at 888-89 (citing *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)). The director of social services also has the statutory authority to delegate his or her responsibilities to staff members as he or she sees fit. *See* N.C. Gen. Stat. § 108A-14(b). "This statutory language contemplates that staff members of departments of social services may be responsible for duties identified in the statute. It creates a structure under which department of social services staff members may function as public officers." *Hobbs*, 135 N.C. App. at 421, 520 S.E.2d at 602. Therefore, it is necessary to analyze the merits of each claim based on the facts and circumstances inherent in the situation. To determine whether or not Moody qualifies as a public official, her role in the investigation must be assessed to determine the level of discretion that she exercised during the investigation.

The complaint alleges that Moody is a social worker for DSS, and works under the supervision of the director of social services. Since Moody was given the task of assessing reports of child abuse, she was serving as the representative of the director of social services for Transylvania County. *See* N.C. Gen. Stat. § 108A-14(b). During her

deposition, Moody testified that she was responsible for conducting the interview with the Hunter household and then making a decision as to what to do with the case once the interview was complete. She testified that when a case came to DSS, it was either classified as a family assessment or an investigate report. The classification would indicate the appropriate steps to be taken during the investigation, including where to conduct interviews and whom to interview. Moody testified that DSS followed the state policies· and manuals with regards to classification of a report and the performance of investigations based on the classification. After an investigation was complete, the social worker would make a decision with respect to the case, including any additional action which should be taken. Moody indicated that she had the authority to reclassify a case as abuse when reports alleged neglect, based on the evidence uncovered during the course of the investigation. Carson Griffin, director of the Transylvania County DSS, ·also testified that the social worker conducting the investigation worked to determine what should be done with the case. Moody testified that the information used to assess the situation in a family assessment is gained from interviews with the parents, other people recommended by the parents to be interviewed, police reports, and from observation of the parents, the children, and the condition of the home. This testimony tends to show that Moody was a part of the decision-making process during the course of the investigation. The plaintiff offered evidence to show that other neighbors had information regarding the treatment and care of the children that might have changed the decision on the case, but did not refute any of· Moody's evidence regarding the procedures and policies of DSS. Therefore, we conclude that Moody exercised discretion in the performance of her duties.

Nevertheless, citing *Meyer v. Walls*, 122 N.C. App. 507, 471 S.E.2d 422 (1996), *rev'd on other grounds*, 347 N.C. 97, 489 S.E.2d 880 (1997), plaintiff claims that Moody did not exercise sufficient discretion to qualify as a public official. Plaintiff's reliance is misguided. *Meyer* deals not with child protective services, but with guardianship over incompetent adults. *See id.* at 509, 471 S.E.2d at 425. The defendants in *Meyer* were responsible as the legal guardians of the decedent, who had been declared mentally incompetent. *See id.* The decedent committed suicide while under the care of the defendants, and the administrator of the estate brought a wrongful death action, claiming negligence on the part of the county social services department and those responsible for his care. *See id.* at 510, 471 S.E.2d at 425. The

Court in *Meyer* held that the director of the county social services department, one of the legal guardians, was a public official and no suit could be maintained against him. *See id.* at 516, 471 S.E.2d at 429. The remaining defendants charged with general guardianship were all social workers for the county, and were found to not be public officials by this Court. *See id.* at 517, 471 S.E.2d at 429. However, those social workers were performing a role that was not specifically delegated to the director of social services by statute. *See* N.C. Gen. Stat. § 108A-14(b). There is no mention of the duties of the director for the care and guardianship of incompetent adults directly, similar to the direct duty to investigate cases of abuse and neglect. *See id.* Therefore, the social workers in *Meyer* were not performing a duty designated by statute, and could not function as the director's representative for that very reason. Moreover, the Supreme Court, in deciding *Meyer*, did not consider whether the defendants were public officials, because the defendants did not appeal from the holding from the Court of Appeals that determined them to be public employees. *See Meyer*, 347 N.C. at 114, 489 S.E.2d at 889-90.

In this case, based on the underlying circumstances of Moody's role at DSS and her role in the investigation, we conclude that Moody was vested with, and exercised, enough discretion consistent with those that qualify as a public official. *See Kitchin v. Halifax Cty.*, 192 N.C. App. 559, 567-69, 665 S.E.2d 760, 766-67 (2008), *disc. review denied and dismissed*, 363 N.C. 127, 673 S.E.2d 135-36 (2009); *Hobbs*, 135 N.C. App. at 420-23, 520 S.E.2d at 601-03. No genuine issue of material fact exists with regards to the claim against Moody, and therefore summary judgment is appropriate. Therefore, the claim against Moody is barred, and the judgment of the trial court must be reversed and this case remanded to the trial court for entry of summary judgment in favor of defendant Moody.

Reversed and remanded.

Judges HUNTER and HUNTER, JR. concur.